# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT PATRICK ZAPPIA,<br><br>Plaintiff,<br>v.<br>WORLD SAVINGS F.S.B., WACHOVIA F.S.B., WELLS FARGO HOME MORTGAGE, and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., a California Company; SANDRA KNOWLES, an individual; GUSTAVO RODRIGUEZ, an individual; KEN REED, an individual; DOES 1 through 10,<br><br>Defendant. | CASE NO. 14cv1428 WQH (DHB)<br><br>ORDER |

HAYES, Judge:

The matters before the Court are: (1) the Motion to Dismiss for Failure to State a Claim (ECF No. 63) filed by Defendants "WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB (sued erroneously as 'World Savings F.S.B., Wachovia FSB, Wells Fargo N.A., Wells Fargo Home Mortgage') and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO. (collectively 'Wells Fargo')"; (2) the Motion to Stay Proceedings (ECF No. 67) filed by Plaintiff Albert Patrick Zappia; and (3) the Amended Motion to Stay Proceedings (ECF No. 69) filed by Plaintiff.

## I. Background

On June 11, 2014, Plaintiff initiated this action by filing a Complaint. (ECF No. 1). On August 15, 2014, Plaintiff filed a motion for leave to amend the Complaint. (ECF No. 12). On September 30, 2014, the Court issued an order granting Plaintiff leave to amend. (ECF No. 15).

On October 10, 2014, Plaintiff filed the First Amended Complaint ("FAC") against Defendants World Savings F.S.B., Wachovia F.S.B., Wells Fargo Home Mortgage, Wells Fargo N.A., and Golden West Savings Association Service Co. (ECF No. 17). On October 24, 2014, Defendants filed a motion to dismiss the FAC. (ECF No. 19). On June 19, 2015, the Court granted Defendants' motion on the grounds that the FAC did not allege facts sufficient to state a claim. (ECF No. 54). The Court dismissed Plaintiff's federal claims under RESPA, RICO, UCL Section 17200, TILA, and the FDCPA and Plaintiff's state claims for accounting, quiet title, and declaratory relief.

On August 11, 2015, Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 61), which became the operative pleading in this case. On August 18, 2015, Defendants (collectively, "Wells Fargo") filed the motion to dismiss. (ECF No. 63). On September 14, 2015, Plaintiff filed an opposition to the motion to dismiss. (ECF No. 65). On September 18, 2014, Defendants filed a reply. (ECF No. 66).

On October 13, 2015, Plaintiff filed a motion to stay proceedings. (ECF No. 67). On October 21, 2015, Plaintiff filed an amended motion to stay proceedings. (ECF No. 69). On October 21, 2015, Defendants filed a response to the motion to stay proceedings (ECF No. 70). On November 1, 2015, Plaintiff filed a reply. (ECF No. 71).

## II. Motion Requesting a Stay of Proceedings

Plaintiff requests a stay of the proceedings in District Court "based upon the fact that Plaintiff has requested that the United States Bankruptcy Court reopen his bankruptcy." (ECF No. 69 at 1). Plaintiff "requests that all proceedings take place in

that venue." *Id.* In response, Defendants assert that "Plaintiff's request for a stay should be denied." (ECF No. 70 at 1). Defendants assert that "[s]hortly after Plaintiff petitioned the bankruptcy court to reopen his case, it issued an order on August 13, 2015 denying his petition." *Id.* In his reply, Plaintiff asserts the bankruptcy court "would not reopen the bankruptcy because doing so was unnecessary for Plaintiff to file a motion for contempt against Wells Fargo . . . ." (ECF No. 71 at 2). Plaintiff asserts that he has since filed a motion for contempt with the bankruptcy court that has been dismissed "but with leave to amend and serve on every interested party." *Id.* at 1-2.

A court may stay an action pending the resolution of independent proceedings which bear upon the case. *Leyva v. Certified Grocers of Cal., Ltd,* 593 F.2d 857, 863-64 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 864. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. American Water Works & Elec. Co.,* 299 U.S. 248, 254 (1936). Whether to grant a stay is within the court's discretion. *Id.* The "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Ind. State Police Pension Trust v. Chrysler LLC,* 129 S. Ct. 2275 (2009).

In determining whether a stay should be granted, courts consider (1) "the possible damage that may result from the granting of a stay;" (2) "hardship or inequity that a party may suffer if required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Plaintiff has not established that he will suffer any "hardship or inequity" if a stay is not issued. Plaintiff has not established that a stay would promote the interests of

justice or judicial efficiency because there is no pending case in bankruptcy court. Plaintiff's request for a stay of the proceedings in District Court is denied.

**II.     Motion to Dismiss**

    **A.     Allegations of the SAC**

"On or about August 26, 2002, Plaintiff refinanced a single family residence located at 1560 Stevenson Court, San Marcos, CA 92069, ('Property') by refinancing through Defendant World Savings Bank . . . ." (ECF No. 61 ¶ 25). "The first deed of trust was recorded in the county recorder's office in San Diego County on September 4, 2002 . . . ." *Id.* ¶ 25. "On December 7, 2003, Plaintiff filed for a Chapter 7 Bankruptcy proceeding in the Southern District Bankruptcy Court, Case #03-010903-JH7." *Id.* ¶ 25. "At that time, Plaintiff held two mortgages on the property, the first priority loan was from WORLD, second loan in the amount of $52,000.00 was with WELLS FARGO, N.A. Plaintiff listed both banks on his Schedule 'D,' 'Creditors Holding Secured Claims' . . . in the amount of $350,000, the amount currently owed on the loan." *Id.* ¶ 25. "In addition to the Schedule 'D,' Plaintiff submitted Schedule 'E' 'Creditors holding unsecured priority claims,' showing that he owed approximately $500,000.00 in tax liabilities." *Id.* ¶ 25.

"During the time of the proceeding, both WORLD and/or WELLS FARGO did not file any proof of claim, dispute anything or file a proof of claim to assert their right to the property and the debt." *Id.* ¶ 26. "More than eight (8) meetings of the creditors were held and there also was no appearance by WORLD or WELLS FARGO." *Id.* ¶ 26. "During the course of his bankruptcy, no attorney or other authorized person approached Plaintiff or his counsel about re-affirming the first or second mortgage." *Id.* ¶ 26. "Plaintiff continued to make his payments towards the first and second mortgages but was told by WORLD they would only accept cash payments." *Id.* ¶ 26. Plaintiff . . . continued to make his cash payments each month at the local WORLD bank branch, but did not receive any monthly invoices showing how the payment was being applied." *Id.* ¶ 26.

"On March 10, 2004, Plaintiff received a discharge from the bankruptcy court ('Exhibit 3') with WORLD and WELLS FARGO both listed as creditors whose debts were discharged." *Id.* ¶ 27. "[N]o entity came forward to claim any interest in the property, disputed the discharge or requested from the court to file a late proof of claim. The court also did not offer (or even mention) to Plaintiff [a] 'ride-through' agreement, and Plaintiff believed the debt to be discharged . . . ." *Id.* ¶ 27.

"Plaintiff continued to make his monthly payments and approximately a year later he began to question certain activities that were taking place with WORLD and Wells Fargo. He continued to receive invoice statements . . . . In these statements there was no mention of any carry over accounting . . . ." *Id.* ¶ 28.

"[W]hen the First Note allegedly was assigned to WACHOVIA (or to other unknown First Investors prior to the transfer to WACHOVIA), without a concurrect assignment of the First Trust Deed, the First Trust Deed became invalid." *Id.* ¶ 29. "The First Trust Deed was not automatically transferred with the assignment of the First Note as is evidenced by: A. No Defendant has shown possession of the Notes. B. No Defendant has proven (1) the terms of the Note nor (2) Defendant's right to enforce the instrument." *Id.* ¶ 31.

"As evidence of the general practices of Wachovia Mortgage, Wachovia FSB, Wells Fargo and World Bank, the accounting became 'questionable' and Plaintiff initated a Qualified Written Request ('QWR') addressing the improper account . . . to Wachovia . . . on May 28, 2009." *Id.* ¶ 32.

> Wachovia FSB responded on June 4, 2009 claiming to be the holder of the note and Deed of Trust ('DOT'). No response was ever given in respect to the Plaintiff's request in May 28, 2009, [] to provide original documentation of the note and DOT. Plaintiff also requested from WACHOVIA information [about] the actual takeover date giving them authority to request any monies owed. Plaintiff could not understand how a discharged debt was transferred to WACHOVIA and considered to be an asset. Plaintiff was also not given any accounting so as to view any increase of payments, escrow, interest, applied payments to principal, or any assessed fees, expenses or miscellaneous charges. This request was to be responded [to] in twenty (20) days from the date of receipt.

*Id.* ¶ 33.

"Another RESPA QWR was sent out to Wachovia on May 3, 2011 . . . Plaintiff once again sent a request for verification, validation and a Truth in Lending Act ('TILA') disputing the accounting on the loan that was not addressed in the first QWR . . . ." *Id.* ¶ 34. Defendant Wachovia Mortgage responded on June 9, 2011, stating that they would respond to the QWR. . . . One month later, on July 7, 2011, Defendant Wachovia Mortgage sent a letter stating they could not reply to Plaintiff's retained attorney . . . and correspondence was sent to the Plaintiff. *Id.* ¶ 35. "As part of this letter, Customer Care Manager, Gustavo Rodriguez, stated that WACHOVIA MORTGAGE . . . is a Division of WELLS FARGO BANK, N.A., and in a review of the allegations made in the last correspondence, there was no predatory lending practices." *Id.* ¶ 36. "Mr. Rodriguez did not state how the investigation was conducted, who did the actual investigation . . . which documentation was reviewed and if there was an accounting showing how WACHOVIA came to the conclusion that no violations were committed." *Id.* ¶ 37. "Mr. Rodriguez merely provided a photo copy of 'the note' to apparently satisfy their obligation to respond to Plaintiff's requests. None of the other questions or requests were answered." *Id.* ¶ 38.

"After several months of waiting for additional response to the QWR and any additional documents, Plaintiff sent a new 'Request for Debt Validation' (RDV) letter dated January 12, 2012 . . . to Wachovia Mortgage, Wachovia Mortgage Corporation . . . and Gustavo Rodriguez via Wachovia Bank . . . ." *Id.* ¶ 39. "In this letter (See Exhibit 7) Plaintiff asserts many allegations under the Fair Debt Collection Practices Act, Section 809(b) and . . . information as to the true holder of the mortgage and Note." *Id.* ¶ 39. "In the above dated letter, Plaintiff informs Wachovia based on his research and calculations, he has been overcharged on the interest of his mortgage. . . . Plaintiff demanded an accounting as to the alleged overcharged interest and improper accounting." *Id.* ¶ 40. "In the letter, Plaintiff explained how he was never 'reaffirmed' or implied he owed the debt with World Savings, Wachovia or Wells Fargo, nor was there any new loan agreement made." *Id.* ¶ 41.

1  "On February 20, 2012, Wells Fargo Home Mortgage responded to the awRDV
2  by a generic form letter refusing to address any additional questions he had about the
3  overpayment of the interest rate and the assignment of the mortgage (See Exhibit 8)."
4  *Id.* ¶ 42. "The letter was signed by Customer Care Manager, Sandra Knowles." *Id.*
5  ¶ 42.

> It appeared as though each time an inquiry into gaining further information from the bank, the requests were being sent to different people rather than the same person. It is unknown if each new person familiarized themselves with any of the previous requests . . . it appeared as though each bank representative either 1) didn't review the entire loan file, or 2) they weren't concerned about providing answers to Plaintiff regarding his payment history and improper accounting.

*Id.* ¶ 42. "On March 26, 2012 and April 16, 2012, Wells Fargo Home Mortgage sent two unsigned, boilerplate form letters stating they will respond to Plaintiff's request." *Id.* ¶ 43.

"On May 25, 2012, Plaintiff sent by certified mail . . . a letter addressed to Customer Service representative Gustavo Rodriguez and Sarah Knowles . . . ." *Id.* ¶ 44. "In this letter to Ms. Knowles, [Plaintiff] advised her of Title 11, U.S.C. § 727 of the Bankruptcy Code, that prohibits debt collection from a debt that has been discharged. The Plaintiff also informed Ms. Knowles that he has never received any verification of the debt . . . ." *Id.* ¶ 44.

"WACHOVIA and WELLS FARGO acquired a loan that has been discharged in bankruptcy court, accepted payments without a new Note or written agreement and has been sending invoices for monies that are not owed." *Id.* ¶ 45. "No modification or amended terms or agreement was ever offered or signed by the borrower . . . ." *Id.* ¶ 46. "Plaintiff has never signed or approved another loan on this property to be issued . . . and he is now concerned there is another 'existing loan' in which he has never seen or agreed upon with WACHOVIA." *Id.* ¶ 47.

> After sending numerous requests to Wells Fargo about how they were illegally collecting money on a debt that was discharged by the bankruptcy court, on December 27, 2012, WELLS FARGO sent a letter stating the Home Equity Line of Credit ('HELOC') (the second mortgage) was discharged. After eight years of paying on the only reason Wells Fargo could give for this recent change was that the debt was discharged in

> bankruptcy in 2004. Nearly eight (8) years later Wells Fargo admitted they were not allowed to collect on this previously discharged debt. WELLS FARGO did not return any of the payments made from 2004 until December 2012. Wells Fargo also never applied any portion of the money paid by the Plaintiff towards the primary lien. Plaintiff has calculated that he has paid over $50,000 towards the HELOC.

*Id.* ¶ 48.

"As each payment was made toward the lien, . . . the payments were never the same amount each month . . . ." *Id.* ¶ 49. "Along with the vastly changing payment, Plaintiff was also being misled as to the true creditor of the alleged lien, the starting balance from 2004, and the additional fees being charged without his knowledge." *Id.* ¶ 49.

"On or about July 15, 2015, after years of asking for complete accounting from Wachovia or Wells Fargo, Plaintiff received a nearly complete accounting (Exhibit 11) starting in 2005. . . . Plaintiff did not receive any accounting prior to 2005, the primary years in which this dispute began." *Id.* ¶ 50.

> Plaintiff began going through the account and comparing it to his own records . . . Plaintiff has estimated the following amounts have not been credited towards the alleged lien: a) A 2003 10-98 tax form statement of payments (principal and interest) from World Savings in the amount of $39,312.00 (Exhibit 12); b) A 2004 10-98 tax form statement of payments (principal and interest) from World Savings in the amount of $34,027.00 (Exhibit 12); c) A 2005 10-98 tax form statement of payments (principal and interest) from World Savings in the amount of $56,000.00 (Exhibit 12) . . . e) Payments of Principal and Interest from 2006 to 2012 of approximately $403,000.00.

*Id.* ¶ 51.

"At Plaintiff's bankruptcy filing in December 2003, the value of the lien was $350,000.00." *Id.* ¶ 57. "Plaintiff continued to make payments on the lien. As per his records he has the accurate value of the outstanding lien. At the end of 2004, WORLD showed a balance of $536,000.00, an increase of approximately $18,000.00 [sic]. Even though [Plaintiff's records showed a balance of] $311,000.00." *Id.* ¶ 57. "WELLS FARGO continued to increase the balance. With the increase in the balance, there was also an increase in the interest on the alleged lien. WELLS FARGO deliberately did not apply the payments, raised the amount owing in order to receive a higher payment

each month." *Id.* ¶ 59. "Plaintiff alleges he has overpaid in interest for 3 years and has never properly been credited for the increase in the interest rate." *Id.* ¶ 59.

> To date, Wells Fargo has stated the Plaintiff owes $157,000.00 and his outstanding balance is approximately $473,000.00. These amounts include principal, interest, miscellaneous fees and inspection fees (plaintiff was never told about these inspections starting in 2012), not to mention escrow fees . . . .

*Id.* ¶ 60. "Plaintiff alleges throughout the mergers and acquisitions from WORLD to WELLS FARGO, they do not have any type of complete and accurate record of Plaintiff's payments prior to 2005." *Id.* ¶ 85.

> According to Defendant's own accounting, 10-98 tax form statements and Plaintiff's own records, Plaintiff alleges that the payments he has paid are close to paying off the alleged lien and he is seeking an accurate accounting showing all payments made, an order disallowing the Defendants to add interest or other miscellaneous fees without properly informing Plaintiff.

*Id.* ¶ 62. "In addition, Plaintiff alleges that the inspection fees are an attempt to add to the outstanding lien and they have not shown the need to conduct inspections of the property without proper notice." " *Id.* ¶ 63. "To date, the total amount in inspection fees alone exceed $1,000.00." *Id.*

Plaintiff brings claims for (1) accounting, "against World, Wachovia, and Wells Fargo;" (2) unjust enrichment, "against World, Wachovia, and Wells Fargo;" (3) declaratory relief, "against all defendants ;"[1] and (4) fraud, "against World, Wachovia, and Wells Fargo." *Id.* ¶¶ 62-82. Plaintiff alleges the following damages

 a) Payments prior to the bankruptcy in 2003 were not applied, $32,000.00
 b) A clouded title to the improper transfers of the discharged Note and inaccurate accounting to the new bank, $485,000.00
 c) Unjust enrichment in excess of $150,000.00 for the overpayment of the undisputed secured amount of $350,000.00
 d) Total amount in damages, approximately $651,000.00
 e) Additional damages $200,000.00 for attorney and legal assistant fees.
 f) Negative reporting (false reporting) to the credit bureaus.

Plaintiff requests the following relief

---

[1] The Complaint alleges that Defendant Golden West Savings Association Service Co. is a subsidiary of Wells Fargo. Plaintiff's sole claim against Defendant Golden West Savings Association Service Co. is for declaratory relief.

1.    Compensation for all economic harm caused by Defendants' conduct . . .
2.    Compensation for all non-economic harm caused by Defendants' conduct
3.    A Declaration that the Promissory Notes and Deeds of Trust secured by the Trust Property were void due to fraud, voidable and rescinded;
4.    A Declaration quieting title to the Trust Property in Plaintiffs;
5.    An accounting from Defendants WORLD, WACHOVIA AND WELLS FARGO from 2002 to 2005.
6.    Judgment that Plaintiff is the owner in fee simple of the Property and that Defendants have no interest in the property adverse to Plaintiff;
7.    Attorney's fees pursuant to statute;
8.    Attorney's fees pursuant to contract;
9.    Prejudgment interest;
10.   Such other relief as the Court deems proper and just.

## B.    Preemption by the Home Owners' Loan Act

Defendants contend that Plaintiff's state law claims are preempted by the Home Owners' Loan Act ("HOLA"). (ECF No. 63-1 at 18). Defendants asserts that

> Wells Fargo's predecessor, World Savings Bank, FSB, was a federal savings bank regulated by the Office of Thrift Supervision (the "OTS"). On December 31, 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB, but remained chartered under HOLA and overseen by OTS. Effective November 1, 2009, Wachovia Mortgage, FSB, converted and merged into Wells Fargo Bank, N.A.

*Id.* at 18-19. Defendants contend that "Wells Fargo is the legal successor to Wachovia and . . . World Savings Bank, FSB." *Id.* at 19. Defendants contend that HOLA regulations preempt state regulatory control of federal savings banks, including regulations regarding the terms of credit, processing, and/or servicing of loans. *Id.* at 20. Defendants contend that "Plaintiff alleges that Wells Fargo engaged in wrongdoing in connection with the servicing of the loan, specifically by accepting and applying (or misapplying) his payments after the bankruptcy proceeding." *Id.* Defendants contend that "Plaintiff's state law claims relate to the 'terms of credit,' 'processing,' and/or 'servicing' of the loans." *Id.* Defendants contend that "[e]ach state law claim thus triggers one or more of HOLA's implementing regulations and is therefore preempted . . . regardless of the precise name plaintiff attaches to them." *Id.* at 20-21. Plaintiff did not respond to Defendant's contentions that the state law claims alleged by Plaintiff are preempted by HOLA.

Through HOLA, Congress gave OTS broad authority to issue lending regulations for federal savings associations. *See* 12 C.F.R. § 560.2(a). ("OTS hereby occupies the entire filed of lending regulation for federal savings associations. . . . [F]ederal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities . . . . For purposes of this section 'state law' includes any state statute, regulation, ruling, order or judicial decision."). The United States Court of Appeals for the Ninth Circuit describes "HOLA and its following agency regulations as a 'radical and comprehensive response to the inadequacies of the existing state system,' and 'so pervasive as to leave no room for state regulatory control.'" *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-1005 (9th Cir. 2008) (citing *Conference of Fed. Sav & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd* 445 U.S. 921, 100 (1980).

"Courts have allowed successor entities not subject to HOLA to assert HOLA preemption where the loan at issue originated with a federal savings bank." *See Terrazas*, 2013 WL 5774120, at *3 (citations omitted). "HOLA and the related regulations have also been applied to conduct by a successor entity that occurs after a federal savings bank merges with a national bank, where the loan was originated with a federal savings bank before the merger." *See id.* (citations omitted). In this case, the loan at issue originated with World Savings Bank, a federal savings bank subject to HOLA. World Savings Bank, FSB subsequently changed its name to Wachovia and later merged with Wells Fargo. Wells Fargo is a successor-in-interest to World Savings Bank, FSB and Wachovia. Therefore, state claims alleging that Wells Fargo engaged in wrongdoing in connection with servicing Plaintiff's loan are subject to HOLA preemption if they are the types of state laws HOLA was designed to preempt. *See Hayes v. Wells Fargo Bank, N.A.*, Civil No. 13CV1707, 2014 WL 3014906, at * 4 (S.D. Cal. July 3, 2014); *Metzger v. Wells Fargo Bank, N.A.*, No. LA CV14-00526, 2014 WL 1689278, at *3-4 (C.D. Cal. Apr. 28, 2014).

Subsection (b) of C.F.R. § 560.2 provides a list of "[i]llustrative examples . . .

[of] the types of state laws preempted" by HOLA, including:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; . . .
>
> (8) Access to and use of credit reports; . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in mortgages; . . .

12 C.F.R. § 560.2(b). Subsection (c) of § 560.2 "lists types of state claims that are not preempted 'to the extent they only incidentally affect the lending operations of federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section.'" *See Terrazas v. Wells Fargo Bank, N.A.*, No. 13CV00133, 2013 WL 5774120, at *4 (S.D. Cal. 2013) (quoting C.F.R. § 560.2(c)). Such "state laws include contract and commercial law, real property law, and tort law." *Id.*

> To determine whether a state law is preempted under § 560.2,
>
> the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

### 1. Accounting

Plaintiff's request for an accounting is preempted by HOLA because the allegations supporting the request are within the specific examples listed in 12 C.F.R. § 560.2(b). Section 560.2(b)(4) preempts state law claims involving "[t]he terms of credit, including . . . balance [and] payments due . . . ." C.F.R. § 560.2(b)(4). Section 560.2(b)(5) preempts state law claims involving "[l]oan-related fees, including without

limitations, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees." C.F.R. § 560.2(b)(5). Therefore, claims regarding allegedly excessive fees are preempted by HOLA. *See Williams v. Wells Fargo Bank, NA*, No. EDCV 13-02075, 2014 WL 1568857, at \*12 (C.D. Cal. Jan. 27, 2014); *Lothlen v. Wells Fargo Bank, N.A.*, No. C13-00922, 2013 WL 6185527, at 3-4 (N.D. Cal. Nov. 26, 2013). Section 560(b)(10) preempts state law claims involving "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." C.F.R. § 560.2(b)(10).

Plaintiff's request for accounting is founded upon the allegation that Defendants lacked the authority to collect or demand mortgage payments from Plaintiff and that Plaintiff cannot identify the owner of the note and the balance due. This state law claim is within the scope of HOLA because it is based on the "terms of credit, including . . . balance [and] payments due, . . . [l]oan related fees, . . . servicing fees, . . . [p]rocessing, origination, [and] servicing" of the mortgage loan. *See* 12 C.F.R. § 560.2(b)(4),(5),(10); *Terrazas*, 2013 WL 5774120, at \*6. Plaintiff's demand for an accounting is preempted by HOLA.

In addition, "[a] cause of action for accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 92 Cal.Rptr.3d 696, 715 (Cal. App. 2009). A lender does not, as a matter of law, have a fiduciary relationship with its borrowers. *See Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095, 2010 WL 8971769, at \*4 (C.D. Cal. Sept. 14, 2010).

In the order dismissing the FAC, the Court granted Defendant's motion to dismiss Plaintiff's request for an accounting because "Plaintiff's First Amended Complaint fails to allege facts demonstrating that circumstances exist between Plaintiff and Defendant Wells Fargo creating a fiduciary relationship." (ECF No. 54 at 19). Plaintiff's request for an accounting in the SAC continues to fail to state a claim. The

SAC does not allege facts sufficient to infer the existence of a fiduciary relationship nor has Plaintiff pled any other extraordinary situation that might otherwise support an assertion of equity jurisdiction. *See Williams*, 2014 WL 1568857, at *9. Defendants' motion to dismiss Plaintiff's request for accounting is granted.

### 2. Fraud

The fraud claim alleged by Plaintiff fits squarely within 12 C.F.R. § 560.2(b)(4), (5), and (10). Plaintiff's fraud claim is based on, and seeks to impose liability for, alleged misrepresentations made in connection with the

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; (5) Loan related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; . . . (10) Processing, origination, servicing, sale or purchase of, investment or participation in, mortgages.

*See* C.F.R. § 560.2(b)(4),(5),(10). Because Plaintiff's fraud claim, as applied, bears on lending activities expressly contemplated by § 520(b), it is preempted. *See Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1237-38 (E.D. Cal. 2010). *See also Singh v. Wells Fargo Bank*, No. C-12-06566, 2013 WL 1787157, at *4 (N.D. Cal March 8, 2013) ("Plaintiff's unjust enrichment and fraud claims . . . [brought] on the premise that Defendant is not entitled to loan payments . . . go to the processing and servicing of Plaintiff's loan . . . [and] are preempted by HOLA.").

In addition, Defendants contend that the SAC fails to allege particularized facts sufficient to support a claim for fraud under Federal Rule of Civil Procedure 9(b) and that the fraud claim is barred by the statute of limitations. (ECF No. 63-1 at 16-18). Plaintiff contends that "[w]ithout any type of reaffirmation agreement, proof of claim (establishing their right to the property) or any new agreement after the discharge, Defendants do not have a right to collect on a debt that is discharged." (ECF No. 65 at 15). Plaintiff contends that "Defendants have not accurately accounted for the monies paid during and after the bankruptcy." *Id.* Plaintiff does not address Defendants'

contention that the fraud claim is barred by the statute of limitations.

A claim for fraud must allege "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Estate of Young*, 72 Cal.Rptr.3d 520, 533 (Cal. App. 2008) (internal quotation marks omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The SAC alleges that "[w]hile the bankruptcy was proceeding, the Defendants did not inform the Plaintiff that he had a right to stop making payments." (ECF No. 61 ¶ 75). The SAC alleges that "WORLD 'bullied' the Plaintiff into making payments during the bankruptcy . . . disregarded the discharge and sent notices continually demanding payments from Plaintiff." *Id.* The SAC fails to allege facts sufficient to establish Defendants' intent to defraud. The SAC alleges that "Plaintiff relied on the accounting provided by the named Defendants as an accurate reflection of his payments towards the lien." *Id.* ¶ 77). However, the SAC alleges that since 2004 Plaintiff has questioned Defendants' conduct servicing the loan and that since 2009 Plaintiff has continuously sought verification of his loan and has disputed the accuracy of the accounting Defendants provided him. *Id.* ¶¶ 28, 32, 34, 39-40, 48-51. These allegations support an inference that Plaintiff did not rely on Defendants' statements. The SAC fails to allege facts sufficient to establish that Plaintiff relied on the alleged fraud. *See Tamburri v. Suntrust Mortg, Inc.*, No. C-11-2899, 2011 WL 6294472, at * 9 (N.D. Cal. Dec. 15, 2011).

In addition, the allegations of fraud based on Defendants' failure to inform Plaintiff that he was not required to continue paying on the loans are barred by the three-year statute of limitations for fraud. The SAC alleges that Defendants' misrepresentations occurred during 2003 and 2004. (ECF No. 61 ¶¶ 26-27). The SAC alleges that Plaintiff began to question the Defendants' activities approximately one

year after the alleged misrepresentations occurred. *Id.* ¶ 28. The SAC alleges that in 2009, Plaintiff sent Defendants a QWR to address the alleged improper accounting. *Id.* ¶ 32. Plaintiff did not file this action against Defendants until 2014, after the state of limitations had expired. Defendants' motion to dismiss the fraud claim is granted.

### 3. Unjust Enrichment

Plaintiff's unjust enrichment claim is premised on the allegation that the Defendants accepted loan payments they were not entitled to. These allegations go to the "[p]rocessing, origination, [and] servicing" of Plaintiff's loan and are therefore preempted by HOLA. *See* 12 C.F.R. § 560.2(b)(10); *Metzger*, 2014 WL 1689278, at *8. *See also Singh*, 2013 WL 1787157, at *4 ("Plaintiff's unjust enrichment and fraud claims . . . [brought] on the premise that Defendant is not entitled to loan payments . . . go to the processing and servicing of Plaintiff's loan . . . [and] are preempted by HOLA."). Defendant's motion to dismiss Plaintiff's third cause of action for unjust enrichment is granted.

### C. Declaratory Relief

Plaintiff's second cause of action requests declaratory relief. A claim for declaratory relief is not a stand-alone claim. *See Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.*, No. 2:06CV2353, 2007 WL 1101456, at *7 (E.D. Cal. Apr. 12, 2007) ("Plaintiffs' claims for specific performance and declaratory relief have been dismissed because they are remedies as opposed to stand-alone claims."); *Mayen v. Bank of Am., N.A.*, No. 14-CV-03757, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015) ("The Court agrees that declaratory relief is not a standalone claim."); *Nguyen v. JP Morgan Chase Bank*, No. SACV 11-01908, 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012) ("A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability.").

If a plaintiff's substantive claims have been dismissed, plaintiff's claim for declaratory relief will be dismissed as well. *See Mayen*, 2015 WL 179541, at *5 ("The Court also agrees that, because Plaintiff's complaint will be dismissed in its entirety,

no viable cause of action remains to support Plaintiff's request for declaratory relief. Plaintiff's declaratory relief claim must be dismissed."); *Ballard v. Chase Bank USA, NA*, No. 10CV790, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief rises or falls with [the] other claims."); *Nguyen*, 2012 WL 294936, at *4 ("Because Plaintiff's substantive claims have been dismissed, Plaintiff's Second Cause of Action asserting a specific claim for declaratory relief must also be dismissed . . . .").

The substantive claims in Plaintiff's SAC have been dismissed because they are preempted by HOLA. Plaintiff's claim for declaratory relief must also be dismissed because it is not a stand-alone claim and does not adequately allege a basis that would entitle Plaintiff to injunctive relief. *See Metzger*, 2014 WL 1689278, at *8 (Plaintiff's underlying claims are preempted. Accordingly, [the] claim [for declaratory relief] also fails.") (citing *Guerrero*, 2010 WL 8971769, *3 (finding that the claim for "declaratory relief [is] preempted by HOLA as [it] attacks Defendant's disclosure and processing, servicing and sale of a mortgage.")). Defendant's motion to dismiss Plaintiff's claim for declaratory relief is granted.

**IV. Conclusion**

IT IS HEREBY ORDERED that the motions requesting a stay of the proceedings (ECF Nos. 67 and 69) filed by Plaintiff are denied.

IT IS FURTHER ORDERED that the motion to dismiss (ECF No. 63) filed by Defendants is granted. The second amended complaint is dismissed with prejudice.

DATED: December 28, 2015

**WILLIAM Q. HAYES**
United States District Judge